UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OAKLAND COUNTY, and
ANDREW E. MEISNER,

          Plaintiffs,                      Civil Action No. 11-12666

         v.                             District Judge Victoria A. Roberts
                                      Magistrate Judge Laurie J. Michelson

FEDERAL NATIONAL MORTGAGE
ASSOCIATION, and
FEDERAL HOME LOAN MORTGAGE
CORPORATION,

          Defendants.

_____/

## OPINION AND ORDER GRANTING
## FEDERAL HOUSING FINANCE AGENCY'S MOTION TO INTERVENE [13]

Oakland County and Andrew E. Meisner, the Oakland County Treasurer, ("Plaintiffs") brought this action against Federal National Mortgage Association and Federal Home Loan Mortgage Corporation ("Defendants") asserting that Defendants recorded real estate transactions with the County Register of Deeds without paying the accompanying transfer tax. (Dkt. 1, Compl. ¶¶ 4-5.) Presently before this Court for Hearing and Determination (Dkt. 26) is Federal Housing Finance Agency's Motion to Intervene (Dkt. 13). For the following reasons, this Court GRANTS Federal Housing Finance Agency's Motion to Intervene.[1]

_____

[1]The Court notes that there is a split in authority as to whether intervention is a non-dispositive matter, and it does not appear that the Sixth Circuit Court of Appeals has addressed the issue. *Compare Washington Mut. Bank v. Chiapetta*, No. 1:07CV00683, 2011 WL 1743389, at *1 (N.D. Ohio May 6, 2011) (treating order on motion to intervene as report and recommendation) *with U.S. v. Marsten Apartments, Inc.*, 175 F.R.D. 265, 267 n.1 (E.D. Mich. 1997) ("A motion to intervene is a nondispositive motion which may be heard and determined by a magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A)." (citing cases)).

This Court views a motion to intervene as similar to one for joinder to add parties or to

## I. BACKGROUND

The Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac") are government-sponsored enterprises ("GSEs"): private, shareholder-owned corporations with federal government charters.  *See* Mark Jickling, Cong. Research Serv., RS22950, *Fannie Mae and Freddie Mac in Conservatorship* 1 (2008); *see also* (Dkt. 22, Pls.' Resp. to Mot. Intervene, Ex. A at 8 (Fannie Mae and Freddie Mac remain private companies post-conservatorship)).  Generally speaking, the GSEs buy home mortgages from the original lenders, "repackage them as mortgage-backed securities, and either sell them or hold them in their own investment portfolios." Jickling, *supra* at 1.

On July 30, 2008, Congress passed the Housing and Economic Recovery Act of 2008, ("Act" or "HERA") and established the Federal Housing Finance Agency ("Agency" or "FHFA").  *See id.* at 2.  Pursuant to the Act, on September 6, 2008, the Agency's Director appointed the Agency as

---

amend to add claims, both of which have been considered non-dispositive by courts in this Circuit. *E.g., Hudson v. Caruso*, No. 1:10-CV-58, 2011 WL 1042286, at *2 (W.D. Mich. Mar. 18, 2011) ("Plaintiffs also appeal the Magistrate Judge's order denying motions for intervention and joinder. In considering an appeal of a Magistrate Judge's ruling on a nondispositive pre-trial motion, the Court applies a 'clearly erroneous or contrary to law' standard of review." (internal citation omitted)); *Turner v. Farmer Jack*, No. 05-40292, 2006 WL 1235759, at *1 (E.D. Mich. May 8, 2006) ("A motion for leave to amend complaint . . . [is a] nondispositive motion[]. . . . Nondispositive orders, such as [the] Magistrate Judge['s] . . . order . . . are governed by the terms of 28 U.S.C. § 636(b)(1)(A).").

Further, in its August 22, 2011 Order, the District Court referred FHFA's Motion to Intervene to this Court for hearing and determination pursuant to 28 U.S.C. § 636(b)(1)(A) rather than for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). *See Shultz v. Berrios*, No. 10-10486, 2011 WL 721303, at *1 n.1 (E.D. Mich. Feb. 23, 2011) ("Plaintiff's non-dispositive motions for leave for joinder and for sanctions were referred to [the] Magistrate Judge . . . for determination as opposed to a recommendation for disposition. . . . In light of the authority this Court conferred upon [the] Magistrate Judge . . . in the April 22 order, the Court is treating [the Magistrate's] 'recommendations' on those non-dispositive matters as determinations and reviewing those determinations based on the standard set forth in § 636(b)(1)(A) . . . .").

Accordingly, this Court issues this Opinion and Order on FHFA's motion.

conservator of Fannie Mae and Freddie Mac. (Dkt. 13, FHFA's Mot. Intervene at ECF 11; *see also* Dkt. 22, Pls.' Resp. to Mot. Intervene at 1.) Under HERA, the Agency "succeed[ed] to all rights, titles, powers, and privileges of [Fannie Mae and Freddie Mac], and of any stockholder, officer, or director of [Fannie Mae and Freddie Mac] with respect to [Fannie Mae and Freddie Mac] and [their] assets." 12 U.S.C. § 4617(b)(2)(A)(i). "In other words, FHFA completely controls Fannie Mae and Freddie Mac." (Pls.' Resp. to Mot. Intervene at 1.)

Oakland County and the Oakland County Treasurer (collectively, "County") assert that through the foreclosure process Fannie Mae and Freddie Mac became the owners of certain properties. (Dkt. 5, Pls.' Mot. Summ. J. at 1-3.) Defendants then conveyed those properties and recorded the accompanying deeds with the Oakland County Register of Deeds. (Dkt. 1, Compl. ¶ 5.) But, Plaintiffs claim, Defendants did so without paying the requisite transfer tax. (Compl. ¶¶ 5-6.) Accordingly, on June 20, 2011, the County filed this suit to recover the unpaid transfer taxes. (Dkt. 1.)

On July 20, 2011, the Agency, as conservator of Fannie Mae and Freddie Mac, filed a motion to intervene in this case. (Dkt. 13.) The motion is fully briefed (Dkts. 22, 25), and on September 15, 2011, this Court heard oral argument (*see* Dkt. 28).

## II. ANALYSIS

### A. Congress Has Granted FHFA a Statutory Right to Intervene Pursuant to Fed. R. Civ. P. 24(a)(1)

"On timely motion, the court must permit anyone to intervene who is given an unconditional right to intervene by a federal statute." Fed. R. Civ. P. 24(a)(1). "[A]n intervenor possesses a statutory right to intervene only when a federal statute unambiguously grants the applicant an unconditional right to participate in litigation. . . . If the intervenor must fulfill conditions, such as

3

proving an 'interest' that has been impaired or impeded, then the legislation is conditional, not unconditional, and Rule 24(a)(1) is not applicable." 6 James Wm. Moore et al., *Moore's Federal Practice* § 24.02 (3d ed. 2011).

The Agency asserts that the Act makes plain that Congress granted it an unconditional statutory right to intervene. (FHFA's Mot. Intervene at ECF 13-14; FHFA's Reply for Mot. to Intervene at 1-2.) The Agency also asserts that "Federal courts have consistently recognized FHFA's statutory right to intervene under 12 U.S.C. § 4617(b)(2)(A)(i) in cases involving Fannie Mae or Freddie Mac." (*Id.* at ECF 14 (citing cases).)

The County responds by asserting that HERA contains no provision explicitly granting the Agency a right to intervene, and the Act's silence is notable given that in other statutes Congress has explicitly provided for the right. (Pls.' Resp. to Mot. Intervene at 3-4.) The County further explains that the cases relied upon by the Agency are not persuasive authority because they involved intervention motions that were stipulated to or unopposed, and/or present little or no justification for granting Agency intervention. (*Id.* at 5-6.)

While both parties have presented strong arguments in support of their respective positions, this Court concludes that the Agency's position is better supported by both the text of the Act and the limited case law on point.

The starting place for interpreting a statute is its text. *See Rubin v. United States*, 449 U.S. 424, 430 (1981). If an act's "language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case," further inquiry is unnecessary. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997); *accord Roberts ex rel. Wipfel v. Hamer*, — F.3d —, 2011 WL 3768254, at *4 (6th Cir. Aug. 26, 2011) ("We begin with the cardinal rule of statutory interpretation: '[T]he

meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain . . . the sole function of the courts is to enforce it according to its terms.  If the words are plain . . . it is neither the duty nor the privilege of the courts to enter speculative fields in search of a different meaning.'" (quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917))).

An examination of HERA as a whole reveals that Congress granted FHFA an unconditional right to intervene in this case.  The Act makes the Agency, as conservator, the immediate successor to "all rights, titles, powers, and privileges of the regulated entity, and of any stockholder, officer, or director of such regulated entity with respect to the regulated entity and the assets of the regulated entity."  12 U.S.C. § 4617(b)(2)(A)(i).  Similarly, the Act provides that the Agency has the right to "take over the assets of and operate the regulated entity with all the powers of the shareholders, the directors, and the officers of the regulated entity and conduct all business of the regulated entity."  12 U.S.C. § 4617(b)(2)(B)(i).  These provisions make clear that Congress intended to grant the Agency the right to exercise plenary control over Fannie Mae and Freddie Mac.  *Cf. In re Federal Home Loan Mortg. Corp. Derivative Litig.*, 643 F. Supp. 2d 790, 797 (E.D. Va. 2009) (holding that the language of 12 U.S.C. §§ 4617(b)(2)(A)(i), (f) "clearly demonstrates Congressional intent to transfer as much control of Freddie Mac as possible to the FHFA, including any right to sue on behalf of the corporation."); *Esther Sadowsky Testamentary Trust v. Syron*, 639 F. Supp. 2d 347, 350 (S.D.N.Y. 2009) ("The Court finds that under the plain language of HERA, 'all rights, titles, powers, and privileges' of Freddie Mac's shareholders are now vested in the FHFA. 12 U.S.C. § 4617(b)(2)(A). These include the right to bring an action on Freddie Mac's behalf.  The FHFA is therefore the true party at interest in this case and should be substituted [as Plaintiff in this derivative action].").  This Court views Congress's broad grant of authority to the Agency under 12 U.S.C.

§§ 4617(b)(2)(A)(i), (b)(2)(B)(i) to include the right to participate in the defense of Fannie Mae and Freddie Mac's assets.

To the extent that the County demands something more explicit in this regard, the Act provides that the Agency as conservator has the power to (1) "preserve and conserve the assets and property of the regulated entity," 12 U.S.C. § 4617(b)(2)(B)(iv), (2) take such action as may be "necessary to put the regulated entity in a sound an solvent condition," 12 U.S.C. § 4617(b)(2)(D)(i), and (3) take such action as "appropriate to carry on the business of the regulated entity and preserve and conserve the assets and property of the regulated entity," 12 U.S.C. § 4617(b)(2)(D)(ii).  And the Court notes that a suit such as the present one could significantly affect the conservation and management of Fannie Mae and Freddie Mac's assets and alter their future business practices.  As such, the Court disagrees with the County that "there is no connection between [the Agency's] right to operate Fannie Mae and Freddie Mac and 'an unconditional right to intervene.'"[2]

Yet the Act still does not use the word "intervene," and the County asserts that notwithstanding the foregoing statutory provisions, "Congress knows how to confer the right to intervene and, when it does, it does so explicitly."  (Pls.' Resp. to Mot. Intervene at 5.)  The Court does not quarrel with the general rule – more applicable in some situations than others – that when Congress intends a particular result, it says so explicitly.  *See, e.g.*, *Meghrig v. KFC Western, Inc.*,

---

[2]The Court further notes that the Act also explicitly contemplates that the Agency will appear on behalf of Fannie Mae and Freddie Mac in litigation.  It provides that "In the event of any appealable judgment, the Agency as conservator . . . shall have all of the rights and remedies available to the regulated entity (before the appointment of such conservator or receiver) and the Agency, including removal to Federal court and all appellate rights." 12 U.S.C. § 4617(b)(11)(B)(i); *see also* 12 U.S.C. § 4617(b)(12)(A) ("Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action *brought by the Agency as conservator* . . . shall be . . . ." (emphasis added)).

516 U.S. 479, 484-85 (1996) ("[A] comparison between the relief available under RCRA's citizen suit provision and that which Congress has provided in the analogous, but not parallel, provisions of CERCLA is telling. . . .  Congress . . . demonstrated in CERCLA that it knew how to provide for the recovery of cleanup costs, and . . . the language used to define the remedies under RCRA does not provide that remedy"); *FCC v. NextWave Personal Commc'ns, Inc.*, 537 U.S. 293, 302 (2003) ("[W]here Congress has intended to provide regulatory exceptions to provisions of the Bankruptcy Code, it has done so clearly and expressly . . . .").  But this Court is not persuaded that this principle means that the scope and purpose of HERA do not grant the Agency an unconditional right to intervene.

The statutes cited by the County grant a right to intervene to an entity that may have little or no control over one of the original parties to the action.  *See* 15 U.S.C. § 1071(b)(2) (Director of the U.S. Patent and Trademark Office (intervenor) and an applicant for, or opposer of, a registration of a trademark (original parties)); 28 U.S.C. § 2323 ("Communities, associations, firms, and individuals interested in the controversy" before the Surface Transportation Board (intervenors) and the United States and non-agency entities (e.g., private businesses, local government) (original parties)); 28 U.S.C. § 2403(a) (United States (intervenor) and entities that are not the "United States or any agency, officer or employee" of the United States (original parties)); 33 U.S.C. § 1365(c)(2) (Environmental Protection Agency Administrator (intervenor) and a "citizen" and "any person" alleged to be in violation of an effluent standard or related order (original parties)); 42 U.S.C. § 2000h-2 (focusing on type of action commenced – one "seeking relief from the denial of equal protection of the laws under the fourteenth amendment to the Constitution on account of race, color, religion, sex or national origin" – instead of the relationship between original parties and the U.S.

7

Attorney General (intervenor)); 42 U.S.C. § 2000e-5(f)(1) (persons aggrieved by an alleged unlawful employment practice (intervenors) and Equal Employment Opportunity Commission, U.S. Attorney General, and "government, governmental agency, or political subdivision" (original parties)).

In contrast, Congress granted the Agency the power to operate Fannie Mae and Freddie Mac with "all" the powers of those two GSEs' directors, officers, and shareholders. *See* 12 U.S.C. § 4617(b)(2)(B)(i), (iii). The Agency also succeeded to all rights, titles, powers, and privileges of Fannie Mae and Freddie Mac (28 U.S.C. § 12 U.S.C. § 4617(b)(2)(A)(i)) – which includes the right to sue and be sued. Given the Agency's all-encompassing ability to control the operations and business decisions of a regulated entity under the Act, it would have been surplusage for Congress to include an explicit right to intervene in lawsuits that could affect the GSEs' assets, liabilities, and future course of doing business (e.g., paying certain taxes). But the same cannot be said for the statutes cited by the County: those statutes ensure that certain entities may intervene even if those entities may have limited or no control over one of the original parties to the suit.

The Court recognizes that the above argument appears susceptible to the following rejoinder: if the Agency has all-encompassing control over Fannie Mae and Freddie Mac, did Congress view Agency intervention as unnecessary? Indeed, the County makes such an argument (albeit in a different context):

> Fannie Mae and Freddie Mac are operated by FHFA – it has the authority to select and control counsel for Fannie Mae and Freddie Mac and to make strategic decisions relating to this litigation through them. If allowed to intervene, what would FHFA say in this case that will not be said by Fannie Mae and Freddie Mac – more fundamentally – that FHFA could [not] instruct Fannie Mae and Freddie Mac to say?

(Pls.' Resp. to Mot. Intervene at 6-7.) But this counter-argument is reconcilable with this Court's

8

reasoning.  While Congress may have enabled the Agency to coach this litigation from the sidelines by directing Fannie Mae and Freddie Mac's decision-making, and therefore the Agency may not *need* to intervene here, this does not necessarily mean that Congress did not grant the Agency the *right* to do so.  Restated, the County's argument may be accounted for by recognizing that the Act grants the Agency more than one way to participate in a lawsuit brought against Fannie Mae or Freddie Mac.

Finally, although the County disagrees with the case law holding that the Agency has a statutory right to intervene in cases where Fannie Mae or Freddie Mac are parties, and asserts that they lacked opposition and are short on explanation, this does not change the fact that courts have relied upon the broad language of the Act in granting intervention.  *See State of Nevada v. Countrywide Home Loans Servicing, LP*, No. 3:10-cv-00419 (D. Nev. Aug. 3, 2010) (Jones, J.) (order granting FHFA's unopposed motion to intervene based only on Rule 24(a)(1)); *Lopez v. Executive Trustee Servs., LLC*, No. 3:09-cv-00180 (D. Nev. Jan. 13, 2010) (Reed, J.) (order granting FHFA's motion to intervene based only on Rule 24(a), and holding, "Under 12 U.S.C. § 4617(b)(2)(A)(1) the FHFA succeeded to all rights, titles, powers, and privileges of Fannie Mae and Fredd[ie] Mac, giving FHFA a right to intervene in this matter."); *Goodwin v. v. Executive Trustee Servs., LLC*, No. 3:09-cv-00306 (D. Nev. Jan 11, 2010) (Reed, J.) (similar); *Kuriakose v. Federal Home Loan Mortgage Co.*, No. 1:08-cv-7281, 2009 U.S. Dist. Lexis 10218, at *3 (S.D.N.Y. Feb. 6, 2009) (noting that the Act "established the FHFA and authorized its intervention in this case as conservator for Freddie Mac.").  In fact, the Agency asserts that no court has denied an Agency motion to intervene in a case involving Fannie Mae or Freddie Mac.  (FHFA's Mot. Intervene at

ECF 14 n.1; FHFA's Reply for Mot. Intervene at 2.).[3]  And Plaintiffs have cited no exception to this general practice.  (*See* Pls.' Resp. to Mot. Intervene at 3-6.)

In short, the County would have the Court read the Act's grant of "all" of Fannie Mae and Freddie Mac's rights and powers to the Agency as something less than its plain language indicates, and the Agency's statutory authority to conserve the two GSEs' assets as less than plenary. Especially because no court has denied on the merits a request by FHFA to intervene as conservator of the GSEs (*see* FHFA's Mot. Intervene at 14 n.1), the Court declines this invitation.  Congress, pursuant to HERA, has granted FHFA a statutory right to intervene under Rule 24(a)(1).

### B.  Alternatively, FHFA Has a Right to Intervene Pursuant to Fed. R. Civ. P. 24(a)(2)

Under Rule 24(a)(2),

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).  Rule 24(a)(2) translates to four required elements: "(1) timeliness of the application to intervene, (2) the applicant's substantial legal interest in the case, (3) impairment of the applicant's ability to protect that interest in the absence of intervention, and (4) inadequate representation of that interest by parties already before the court."  *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997).  This Court must also be mindful that "Rule 24 should

---

[3]*See, e.g.*, *Herron v. Fannie Mae*, No. 10-00943 (D.D.C. May 23, 2011) (Minute Order);  *In re Mortgage Elec. Registration Sys. (MERS) Litig.*, No. 09-2119-JAT (D. Ariz. May 17, 2010) (Order, unopposed); *Remington v. Fed. Nat'l Mortgage Ass'n*, No. 1:09-cv-03230 (D. Md. Mar. 16, 2010) (Paperless Order, unopposed); *In re Fannie Mae 2008 Securities Litig.*, Nos. 08Civ.7831, 09Civ.1352 (S.D.N.Y. Oct. 13, 2009) (Order, unopposed); *Ohio Pub. Employees Ret. Sys. v. Freddie Mac*, No. 4:08-cv-00160 (N.D. Ohio Nov. 19, 2008) (Order, stipulated).

be 'broadly construed in favor of potential intervenors.'" *Coalition to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 779 (6th Cir. 2007) (quoting *Purnell v. City of Akron*, 925 F.2d 941, 950 (6th Cir. 1991)); Fed. R. Civ. P. 24(a)(2), advisory committee's note (1966) ("[I]f an [applicant] would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene . . . ."). The timeliness of the Agency's motion is not disputed, and the Court finds that the Agency has established each of the remaining three requirements.

Regarding the second element, the Sixth Circuit interprets the fact-specific "concept of legal interest liberally." *Pride v. Allstate Ins. Co.*, No. 10-13988, 2011 WL 692299, at *3 (E.D. Mich. Feb. 18, 2011) (citing *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997); *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987)). The County seeks damages from Fannie Mae and Freddie Mac for unpaid transfer taxes. The County also seeks injunctive relief that could alter whether those GSEs' will pay transfer taxes in the future. As explained above, the Agency has a statutory right to "put [Fannie Mae and Freddie Mac] in a sound and solvent condition" and "preserve and conserve" those GSEs' assets. 12 U.S.C. § 4617(b)(2)(D). The Agency therefore has a legal interest in minimizing the impact of this suit on those assets. Indeed, because of Fannie Mae and Freddie Mac's financial difficulties, Congress made the Agency solely responsible for preserving Fannie Mae and Freddie Mac's assets. (*See* FHFA's Reply for Mot. Intervene at 3.) Accordingly, under the Sixth Circuit's "rather expansive notion of the interest sufficient to invoke intervention of right," *Miller*, 103 F.3d at 1245, the Agency has demonstrated the requisite legal

11

interest.[4]

Turning to the third element, "the intervenor has a minimal burden [of] show[ing] that the ability to protect its interest may be impaired without intervention." *Pride*, 2011 WL 692299, at *3 (citing *Miller*, 103 F.3d at 1247). Further, "Rule 24(a) does not require the intervenor to show that the interest will be impaired; it only has to demonstrate that it is *possible*." *Id.* (citing *Purnell v. City of Akron*, 925 F.2d 941, 948 (6th Cir. 1991)). Here, intervention allows the Agency the opportunity to protect its interest in Fannie Mae and Freddie Mac's assets. Absent the Agency's participation, that interest may be impaired because of Fannie Mae and Freddie Mac's inability to assert certain statutory defenses unique to the Agency. (*See* FHFA's Reply for Mot. Intervene at 3 (citing 12 U.S.C. §§ 4617(j)(2), (j)(4), (f)).) Moreover, as argued by the Agency, a judgment that Fannie Mae and Freddie Mac are liable to the County for unpaid transfer taxes could impair the Agency's present plans for returning the GSEs to a "sound and solvent condition." (*See* FHFA's Reply for Mot.

---

[4]At oral argument, the County asserted that because it could not state a cognizable claim against FHFA (because it was not FHFA that recorded the deeds in question) that FHFA could not intervene as a defendant. The Court does not read Rule 24(a) so narrowly – the Rule requires an intervenor to have an "interest relating to the property or transaction that is the subject of the action." The text does not require that a plaintiff must be able to sue a putative defendant-intervenor. *See Mattel, Inc. v. Bryan*t, 441 F. Supp. 2d 1081, 1097 (C.D. Cal. 2005) (noting, in discussing whether intervention would destroy diversity jurisdiction, "'[W]hether the context is removal or not, there can be persons who intervene on the side of the defendants . . . against whom the plaintiff has no claim to assert. Indeed, the intervention of persons under Rule 24 typically will be at the instigation of the intervenors, and not at the urging of the plaintiff, and will be precipitated by the persons' concern that disposition of the action in their absence will as a practical matter impair or impede their ability to protect their interests.'" (quoting Joan Steinman, *Supplemental Jurisdiction in § 1441 Removed Cases: An Unsurveyed Frontier of Congress' Handiwork*, 35 Ariz. L.Rev. 305, 344-45 (1993)); *cf. Solid Waste Agency of Northern Cook County v. U.S. Army Corps of Eng'rs*, 101 F.3d 503, 507 (7th Cir. 1996) ("The strongest case for intervention is not where the aspirant for intervention could file an independent suit, but where the intervenor-aspirant has no claim against the defendant yet a legally protected interest that could be impaired by the suit. . . . For it is here that intervention may be essential.").

Intervene at 3.)

The Agency has also satisfied the fourth requirement in this case. "[T]he burden for establishing inadequate representation is . . . minimal. Under Rule 24(a), the intervenor does not have to show that representation *will* be inadequate. The inadequate-representation requirement will be satisfied if the intervenor shows that representation of its interest *may* be inadequate." *Pride*, 2011 WL 692299, at *3 (citing *Miller*, 103 F.3d at 1247; *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n. 10 (1972)). As noted, the Agency has argued that there are certain statutory tax-related defenses unique to it, and has asserted that these defenses cannot be invoked by Fannie Mae or Freddie Mac. (*See* FHFA's Reply for Mot. Intervene at 3 (citing 12 U.S.C. §§ 4617(j)(2), (j)(4), (f)).) Although the viability of these defenses has not been established, it is plain that the Agency *may* have avenues to shield the assets it has been given the statutory right to manage and preserve that are closed to Fannie Mae and Freddie Mac. *See Grutter v. Bollinger*, 188 F.3d 394, 400-01 (6th Cir. 1999) (noting that to demonstrate inadequacy of interests, "'[i]t may be enough to show that the existing party who purports to seek the same outcome will not make all of the prospective intervenor's arguments.'" (quoting *Miller*, 103 F.3d at 1247); *Natural Resources Defense Council v. Norton*, No. 1:05-CV-01207, 2006 WL 1319408, at *6-7 (E.D. Cal. May 13, 2006) (permitting intervention under Rule 24(a)(2) where intervenor would raise a "Commerce Clause" defense that party to the suit would not raise).

Regarding this fourth element, the County responds that the Agency must satisfy three sub-elements before this Court may deem Fannie Mae and Freddie Mac's representation inadequate. (Pls.' Resp. to Mot. Intervene at 7.) In particular, the County asserts that "a prospective intervener 'fails to meet his burden of demonstrating inadequate representation when 1) no collusion is shown

13

between the existing party and the opposition; 2) the existing party does not have any interests adverse to the intervener; and 3) the existing party has not failed in the fulfillment of its duty.'" (Pls.' Resp. to Mot. Intervene at 7 (quoting *Jordan v. Michigan Conference of Teamsters Welfare Fund*, 207 F.3d 854, 863 (6th Cit. 2000).)

This Court disagrees that these are requirements in every case. Rather, it appears that the three inadequacy sub-elements are *factors* that a court may consider when deciding whether representation will be inadequate. *Triax Co. v. TRW, Inc.*, 724 F.2d 1224, 1228 (6th Cir. 1984) ("These three factors, however, cannot be said to be a comprehensive list of the circumstances where intervention of right ought to be granted."); *see also Geier v. Sundquist*, 94 F.3d 644 (Table), 1996 WL 464979, at *2 (6th Cir. 1996) ("*Factors* to be considered in determining the adequacy of representation are: (1) if there is collusion between the representative and an opposing party . . . ." (emphasis added)); *Purnell v. City of Akron*, 925 F.2d 941, 949 (6th Cir. 1991) ("*Some of the factors* to be considered in determining whether representation is adequate are . . . (1) if there is collusion between the representative and an opposing party . . . ." (emphasis added)). In fact, it appears that some courts have mistakenly treated the factors as requirements:

> In a familiar case pre-dating the amended [Rule 24] then-Judge Blackmun wrote that inadequacy of representation is or may be shown "by proof of collusion between the representative and an opposing party, by the representative having or representing an interest adverse to the intervener, or by the failure of the representative in the fulfillment of his duty." This was a wholly accurate statement. . . . But in several cases the statement has been turned around and it has been said:
>
>> The rule is that representation is adequate if no collusion is shown between the representative and an opposing party, if the representative does not have or represent an interest adverse to the proposed intervenor and if the representative does not fail in the fulfillment of his duty.

14

> It is one thing to say that inadequate representation can be shown by establishing one of three circumstances. It is quite another to say that representation is adequate unless one of those three circumstances is present. If Judge Blackmun had said that representation is inadequate "only" if one of the circumstances he listed were present the proposition would be reversible . . . . The wide variety of cases that come to the courts make it unlikely that there are three and only three circumstances that would make representation inadequate and suggest that adequacy of representation is a very complex variable.

7C Charles Alan Wright et al., *Federal Practice & Procedure, Civ.* § 1909 at 392-93 (3d ed. 2007).[5]

In this particular case, although none of the three inadequate-representation sub-elements are present, the Court finds them of little relevance to the fourth requirement for intervention under Rule 24(a)(2). Rather, as noted, the uniqueness of the Agency's statutory defenses indicates that Fannie Mae and Freddie Mac's defense of its assets may be inadequate to protect the Agency's statutory interest in those assets.

Accordingly, this Court alternatively concludes that FHFA may intervene in this case pursuant to Rule 24(a)(2).

### III. CONCLUSION

For the foregoing reasons, this Court GRANTS the Federal Housing Finance Agency's Motion to Intervene.

### IT IS SO ORDERED.

The attention of the parties is drawn to Fed. R. Civ. P. 72(a), which provides a period of

---

[5]The Court notes that *Jordan*, the case cited by the County, itself cites *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987) for the three-element "requirement." But *Bradley* in turn relied on cases that in turn relied on cases that "turned around" Judge Blackmun's statement. *See* 7C Charles Alan Wright et al., *Federal Practice & Procedure, Civ.* § 1909 at 392 n.11 (3d ed. 2007) (citing *Martin v. Kalvar Corp.*, 411 F.2d 552, 553 (5th Cir. 1969); *Peterson v. U.S.*, 41 F.R.D. 131, 133 (D. Minn. 1966)).

fourteen days from the date of receipt of a copy of this order to file objections for consideration by the district judge under 28 U.S.C. § 636(b)(1).

S/Laurie J. Michelson
Laurie J. Michelson
United States Magistrate Judge


Dated: September 20, 2011

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon the parties and/or counsel of record via the Court's ECF System and/or U. S. Mail on September 20, 2011.

s/J. Johnson
Case Manager to
Magistrate Judge Laurie J. Michelson

16