UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OAKLAND COUNTY, ET AL.,

    Plaintiffs,

vs                                                              Case No: 11-12666
                                                              Honorable Victoria A. Roberts

FEDERAL HOUSING FINANCE AGENCY
AS CONSERVATOR FOR FEDERAL
NATIONAL MORTGAGE ASSOCIATION AND
FEDERAL HOME LOAN MORTGAGE COMPANY;
FEDERAL NATIONAL MORTGAGE ASSOCIATION;
AND FEDERAL HOME LOAN MORTGAGE COMPANY,

    Defendants.

_____/

**ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

This matter is before the Court on cross-motions for summary judgment filed, on the one hand, by Plaintiffs Oakland County and Andrew E. Meisner, Oakland County Treasurer ("Plaintiffs"), Intervenor-Plaintiffs the Michigan Department of Attorney General and the Michigan Department of Treasury ("State Plaintiffs"), and, on the other hand, by Defendants the Federal National Mortgage Association ("Fannie Mae"), the Federal Home Loan Mortgage Corporation ("Freddie Mac")(together, the "Enterprises"), and Intervenor-Defendant Federal Housing Finance Agency ("FHFA" or "Conservator," and, together with the Enterprises, "Defendants").

Plaintiffs claim that Defendants failed to pay the Michigan real estate transfer tax

1

when they conveyed property in Oakland County.  They seek a judgment that Defendants are liable for unpaid taxes in an amount to be determined.  Defendants claim they are exempt from the tax.

Oral argument was heard on February 10, 2012.

For the reasons that follow, Plaintiffs' and State Plaintiffs' motions for summary judgment are **GRANTED**.  Defendants' motion for summary judgment is **DENIED**.

## II.   BACKGROUND

This case involves the Enterprises' claimed exemption from the Michigan State Real Estate Transfer Tax, MCL § 207.521 *et seq.*, and the County Real Estate Transfer Tax, MCL § 207.501 *et seq.* (the "Transfer Taxes").  The statutes impose a tax by the State of $7.50 per $1,000 in value on the property sold, and by the County of $1.10 per $1,000.  *Id.* §§ 502, 523.  These taxes are not taxes on real property; rather, they are excise taxes (not direct taxes), paid on the recording of deeds, when ownership of property is transferred.  An "excise tax" is a tax levied upon the use and transfer of property.

Congress chartered the Enterprises to "establish secondary market facilities for residential mortgages," to "provide stability in the secondary market for residential mortgages," and "to promote access to mortgage credit throughout the Nation."  Defs. Resp. Br., Doc. 40, p.3 (quoting 12 U.S.C. § 1716).  Though originally created as federal entities, both Fannie Mae and Freddie Mac later became private corporations, which publicly traded.  They were required to file reports with the Securities and Exchange Commission.  Pltfs. Br., Doc. 5, p. 1.

FHFA is a federal agency created by the Housing Economic Recovery Act of 2008 ("HERA") to regulate the Enterprises.  12 U.S.C. § 4501 *et seq.*  On September 6, 2008, the Director of FHFA placed the Enterprises into FHFA's conservatorship "for the purpose of reorganizing, rehabilitating or winding up [their] affairs."  Defs. Resp. Br., Doc. 40., p.4 (quoting 12 U.S.C. § 4617(a)(2)).  FHFA, as Conservator, "'immediately succeed[ed] to . . . all rights, titles, powers, and privileges of [the Enterprises], and of any stockholder, officer, or director of [the Enterprises]'" and all rights (i) to the assets of the Enterprises; (ii) to collect all obligations and money due the Enterprises; (iii) to perform all functions of the Enterprises, in their name, consistent with appointment of the Conservator; and (iv) to exercise such incidental powers as may be necessary to carry out all powers and authorities specifically granted."  *Id.* (citing 12 U.S.C. §§ 4617(b)(2)(A), (B), (J)).

The Enterprises own a large number of mortgages in Oakland County and throughout the country.  As mortgages become delinquent and properties enter into foreclosure, the Enterprises take ownership of the properties and attempt to locate buyers.  Once the Enterprises locate a buyer for a foreclosed property, they convey the property and record the deed.  When the Enterprises present the deed for recording, they do not pay the transfer tax; they claim they are exempt under state law or federal law, or both, because transfer taxes are taxes on them as corporations.

During the foreclosure crisis of the past several years, the number of properties the Enterprises took ownership of ballooned.  The Enterprises' potential transfer tax liability increased accordingly.  Oakland County alone claims the Enterprises owe it in excess of millions of dollars.

Plaintiffs filed suit against the Enterprises on June 20, 2011.  On July 20, 2011, FHFA moved to intervene as defendant; Magistrate Judge Michelson granted the motion on September 20, 2011.  On November 10, 2011, the State Plaintiffs moved to intervene; the parties stipulated to the intervention on November 23, 2011.  Plaintiffs and State Plaintiffs filed separate motions for summary judgment raising substantially the same arguments.  Defendants filed joint responses and cross-motions for summary judgment.

Plaintiffs allege that the Enterprises are liable for the Transfer Taxes because they are private corporations, not federal entities, and because their federal statutory exemptions from certain taxes do not include the Transfer Taxes.  Plaintiffs say that the Supreme Court has long interpreted an exemption from "all taxation" to cover only direct taxation, not excise taxes such as the Transfer Taxes.  Defendants respond that federal statutes granting them immunity from "all taxation" exempt them from payment of Transfer Taxes.  Defendants further argue that their status as private entities or federal instrumentalities is irrelevant since Congress expressly exempted them from "all taxation."  Therefore, Defendants say the Court need not decide whether they are constitutionally immune from all state and local taxation; the Court need only interpret federal statutes to conclude that they are immune from the Transfer Taxes.

### III.  LAW AND ANALYSIS

#### A.  Standard of Review

The Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). When reviewing cross-motions for summary judgment, the court must assess each motion on its own merits. *Federal Ins. Co. v. Hartford Steam Boiler Insp. and Ins. Co.*, 415 F.3d 487, 493 (6th Cir. 2005). "The standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation." *Lee v. City of Columbus*, 636 F.3d 245, 249 (6th Cir. 2011). "[T]he filing of cross-motions for summary judgment does not necessarily mean that an award of summary judgment is appropriate." *Spectrum Health Continuing Care Group v. Anna Marie Bowling Irrevocable Trust*, 410 F.3d 304, 309 (6th Cir. 2005). However, summary judgment is particularly appropriate where "the case turns upon an issue of law, such as the construction of a statute." *Salazar v. Brown*, 940 F.Supp. 160, 161 (W.D. Mich. 1996).

### B. Federal Statutes Exempt Defendants from "All Taxation"

The Court begins its analysis by examining the language of the statutory exemptions Congress granted Defendants. *See Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49. 56 (1989) ("It is well settled that the starting point for interpreting a statute is the language of the statute itself.").

Fannie Mae's federal charter provides that:

> The corporation, including its franchise, capital, reserves, surplus, mortgages or other security holdings, and income, **shall be exempt from all taxation** now or hereafter imposed **by any State**, territory, possession, Commonwealth, or dependency of the United States, or by the District of Columbia, **or by any county**, municipality, or local taxing authority, except that any real property of the corporation shall be subject to State, territorial, county, municipal, or local taxation to the same extent as other real property is taxed. 12 U.S.C. § 1723a(c)(2) (emphasis added)

In nearly identical terms, Freddie Mac's charter states:

5

> The Corporation, including its franchise, activities, capital, reserves, surplus, and income, ***shall be exempt from all taxation*** now or hereafter imposed by any territory, dependency, or possession of the United States or ***by any State, county***, municipality, or local taxing authority, except that any real property of the Corporation shall be subject to State, territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed. 12 U.S.C. § 1452(e) (emphasis added).
>
> Lastly, HERA provides that FHFA:
>
> including its franchise, its capital, reserves, and surplus, and its income, ***shall be exempt from all taxation imposed by any State, county***, municipality, or local taxing authority, except that any real property of the Agency shall be subject to State, territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed . . . 12 U.S.C. § 4617(j)(2) (emphasis added).

In addition, HERA provides that FHFA, as Conservator, shall not be liable for any fines or penalties "including those arising from the failure of any person to pay any real property, personal property, probate, or recording tax or any recording or filing fees when due." 12 U.S.C. § 4617(j)(4).

The three statutes exempt each of the Defendants (the Corporations) from "all taxation" by state and local governments. However, distinctions are drawn between the corporations and their real property; their real property holdings are subject to a direct tax. The statutes are broadly worded, and their language is clear and unambiguous.

The parties are largely in agreement on the interpretation of the three statutes. First, they agree that the statutes control the outcome of this case. Moreover, they all agree that the statutes exempt the Corporations from all taxation, but that real property owned by the Corporations is subject to direct taxation according to the value of the property. Thus, the parties recognize that the statutes treat the Corporations separately from their real property holdings. In addition, the parties agree that transfer taxes are

6

excise taxes, not taxes on real property. Therefore, the Transfer Taxes do not fit into the exception in the statutes for real property.

The sole point of disagreement is over the interpretation of "all taxation." If Plaintiffs are to prevail, the Court must find that "all taxation" does not encompass Transfer Taxes.

### C. The Nature of Transfer Taxes

The parties agree that the Transfer Taxes are excise taxes, not direct taxes. Courts treat excise taxes, such as transfer taxes, differently from direct taxes. Since this case ultimately turns on this distinction, it is instructive to first examine the nature of transfer taxes.

A transfer tax is a form of excise tax. The Supreme Court defined an excise tax as one "which is levied upon the use or transfer of property, even though it might be measured by the property's value." *United States v. Wells Fargo Bank*, 485 U.S. 351, 355 (1988). The Court compared this with a direct tax, which is "a tax levied upon the property itself." *Id.* In finding that the City of Detroit income tax was an excise, the Michigan Supreme Court defined an excise as "a tax imposed upon the performance of an act, the engaging in an occupation, or the enjoyment of a privilege." *Dooley v. City of Detroit*, 121 N.W.2d 724, 729 (Mich. 1963); *see also* 71 AM JUR. 2d State and Local Taxation § 24 (2012) ("An excise tax is any tax which does not fall within the classification of a poll tax or a property tax, and which embraces every form of burden not laid directly upon persons or property.").

Numerous courts have held that transfer taxes, like the ones at issue here, are excise taxes. *See, e.g., Coolidge v. Long*, 282 U.S. 582, 608 (1931) (a "transfer tax" is

7

"an excise on the privilege of transmission" of property rights); *Berry v. Kavanagh*, 137 F.2d 574, 575 (6th Cir. 1943) (federal "transfer tax measured by the consideration paid or agreed to be paid" is "an excise upon the privilege of selling lands, tenements or other realty. The burden of the tax attaches when the property is sold."); *Steven v. Comm'r of Internal Revenue*, No. 5497-03S, 2004 WL 1663400 at *3 (U.S. Tax Ct. July 27, 2004) ("[T]his Court has held on several occasions that so-called transaction privileges taxes concerning the transfer of property are not deductible [for federal income tax purposes] because such taxes are not imposed on interests in property.").

The Michigan Transfer Taxes are excise taxes: they are taxes on the act of transferring the property, not on the property itself. The taxes are implicated only when property is conveyed, and a deed is recorded. *See* MCL §§ 207.502, 207.523. Because the Transfer Taxes are not taxes on real property, the Court must decide whether statutes which exempt Defendants from "all taxation," intend to exempt them from the payment of Transfer Taxes.

### D. An Exemption from All Taxation Covers Only Direct Taxes, Not Excise Taxes

Plaintiffs rely upon the Supreme Court's decision in *Wells Fargo* for the proposition that an exemption from "all taxation" does not cover excise taxes such as the Michigan Transfer Taxes. 485 U.S. 351. Plaintiffs say that *Wells Fargo* made clear that an exemption from all taxation covers only direct taxes, not excise taxes. The Court agrees.

In *Wells Fargo*, the Supreme Court considered whether certain items of personal

property–"Project Notes"–were exempt from the federal estate tax. In the late 1930s, Congress passed the Housing Act, 50 Stat. 888 *et seq.*, which empowered state and local governments to issue tax-free obligations called Project Notes to finance housing projects. 485 U.S. at 353. Congress provided that "[Project Notes], including interest thereon, . . . shall be exempt from all taxation now or hereafter imposed by the United States." *Id.* at 355. Discussing the exemption, the Supreme Court stated:

> Well before the Housing Act was passed, an exemption of property from all taxation had an understood meaning: the property was exempt from *direct* taxation, but certain privileges of ownership, such as the right to transfer the property, could be taxed. Underlying this doctrine is the distinction between an excise tax, which is levied upon the use or transfer of property . . . and a tax levied upon the property itself. The former has historically been permitted even where the latter has been constitutionally or statutorily forbidden. *Id.*

After reviewing the case law, the Supreme Court held that the exemption from all taxation did not exempt the Project Notes from excise taxes such as the estate tax. The Court noted that where Congress had, on other occasions, exempted property from estate taxation, it generally referred specifically to the estate tax rather than to "all taxation." *Id.* at 356.

In reaching its conclusion, the Court reviewed over eighty years of Supreme Court case law holding that excise taxes have historically been permitted, even when tax on the property has been forbidden. In *Greiner v. Lewellyn*, 258 U.S. 384 (1922), the Supreme Court held that the federal government could collect federal estate tax on bonds issued by the State of Pennsylvania, despite the fact that principles of federalism and dual sovereignty prevented the federal government from imposing a direct tax on the bonds. *Id.* at 387. The decision was based on the fact that the estate tax "is a duty or excise, and not a direct, tax like that on income from municipal bonds." *Id.* Similarly,

9

the Supreme Court held in *Murdock v. Ward*, 178 U.S. 139, 148 (1900) that a federal tax exemption on federal bonds did not protect the bonds from inclusion in decedent's estate for purpose of calculating the estate tax. This decision, too, was based on the distinction between a direct tax and an excise tax. The Court relied on the fact that "the tax was not imposed on the property passing under the state laws, but on the right of transfer by will . . ." *Id.* at 146.

To help illustrate why excise taxes have historically been deemed permissible -- even where direct taxes are statutorily or constitutionally prohibited -- the Court in *Murdock* discussed another type of excise tax, a corporate franchise tax. The Court noted that even though a state could not tax federal bonds directly, it could tax a corporation whose property is composed in whole or in part of federal bonds. 178 U.S. at 147. This is because such tax is imposed "not on specific property, but on the rights and privileges bestowed by the state." *Id.* A state bestows a corporation with the right to do business in the state, and the state maintains power to regulate corporations; consequently, the state is free to tax the corporation's activities within the state.

A third Supreme Court case, *United States Trust Co. v. Helvering*, 307 U.S. 57 (1939) applied the prior rules announced in *Greiner* and *Murdock* to conclude that statutes exempting federal obligations from "all taxation" referred only to direct taxation. The issue was whether proceeds of a War Risk Insurance policy that were exempt by federal statute from "all taxation," were still subject to the federal estate tax. The Court held they were because, "[a]n estate tax is not levied upon the property of which an estate is composed. It is an excise imposed upon the transfer of or shifting in relationships to property at death." *Id.* at 60.

The reasoning in *Wells Fargo* naturally follows these earlier decisions. The Court in *Wells Fargo* recognized that "all taxation" had an understood meaning, and that it applied only to direct taxes, not excise taxes.

*Wells Fargo* is dispositive of Plaintiff's case. Like the exemption in *Wells Fargo*, the exemptions here exempt Defendants from "all taxation." The Transfer Taxes, like the estate tax in *Wells Fargo*, are excise taxes. The Supreme Court in *Wells Fargo* made clear that where a statute prohibits the collection of "all taxation," an excise tax is still due "even where the latter [a property tax] has been constitutionally or statutorily forbidden." *Wells Fargo*, 485 U.S. at 355. *Wells Fargo* dictates that Defendants' statutory exemptions do not cover the Transfer Taxes.

Further, *Wells Fargo* states that "exemptions from taxation are not to be implied; they must be unambiguously proved." 485 U.S. at 354. Despite the presumption against implied exemptions, the Supreme Court still found that "all taxation" unambiguously did not include excise taxes. Because there is a presumption against implied tax exemptions, and "all taxation" has been implied to mean "direction taxation," and the Michigan Transfer Taxes are an excise tax rather than a direct tax, Defendants are unambiguously liable for the Transfer Taxes.

Defendants maintain that *Wells Fargo* is inapposite because the Supreme Court there considered an exemption of specific property from all taxation; here, the Court must consider whether entire corporations are exempt. The Court believes this does not make a difference. *Wells Fargo* is a case about the understood and long-established meaning of "all taxation," the same statutory language in Defendants' exemptions. Moreover, the cases Defendants cite in support of their theory that the

11

Enterprises were granted broad entity exemptions are distinguishable.

Defendants' two most persuasive cases–*Laurens* and *Pittman*–involve states' attempted imposition of a documentary stamp tax on federal financial institutions that were similarly granted an exemption from "all taxation." In *Laurens Fed. Savings and Loan Ass'n v. South Carolina Tax Comm'n*, 365 U.S. 517 (1961), the Supreme Court considered a federal statute that exempted a Federal Home Loan Bank ("FHLB") "including its franchise, its capital, reserves, and surplus, its advances, and its income" from "all taxation." *Id.* at 519, citing 12 U.S.C. § 1433. The issue was whether "advances," or loans, secured by promissory notes, were subject to a state documentary stamp tax. The Court held that they were not. The Court believed that the stamp tax, in essence, amounted to a direct tax on the "advances" of the FHLB, and that advances were an integral part of the loan transactions. *Id.* at 522. In *Pittman v. Home Owners' Loan Corp.*, 308 U.S. 21 (1939), the Supreme Court considered similar facts and held that a federal mortgage bank was exempt from paying a stamp tax on mortgages. The Court again implied that the stamp tax was, by its nature, akin to a direct tax because it was imposed on an "indispensable element[] in the lending operations authorized by Congress." *Id.* at 32. The Court construed the term "loans" in the exemption to cover the entire lending process, and found that the stamp tax amounted to an impermissible tax on "loans."

Michigan Transfer Taxes are imposed on the privilege of doing business, not on the Enterprises themselves. Therefore, *Laurens* and *Pittman* are inapplicable. The Transfer Taxes are not imposed on "loans" or "advances" of the Enterprises, but rather on one of their activities: the transfer of property. Moreover, the loans and advances at

12

issue in *Laurens* and *Pittman* were an indispensable part of the banks' businesses, and were expressly authorized by Congress. There is no suggestion that the Michigan Transfer Taxes affect an indispensable part of the Enterprises' businesses. Lastly, although the Supreme Court interpreted federal statutes in *Laurens* and *Pittman*, constitutional immunity bolstered the Court's reasoning. *See, e.g., Pittman*, 308 U.S. at 32 ("[T]he activities of the Corporation through which the national government lawfully acts must be regarded as governmental functions and as entitled to whatever immunity attaches to those functions when performed by the government itself . . ."). There is no suggestion here that the Enterprises are constitutionally immune from taxation. Thus, the suggestion that their activities as corporations are immune is even further attenuated.

Other cases cited by Defendants are also not on point. In *Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95 (1941), the Supreme Court held that a federal land bank granting a statutory exemption similar to the Enterprises' was exempt from state sales tax. The Court relied on the fact that the land bank was constitutionally immune from taxation due to its status as a federal instrumentality. *Id.* at 102 ("Congress has the power to protect the instrumentalities which it has constitutionally created."). Again, there is no suggestion here that the Enterprises are instrumentalities of the federal government. Defendants' took the position that their status as federal instrumentalities was irrelevant.

In *Federal Lank Bank of Wichita v. Board of County Commissioners*, 368 U.S. 146, 149 (1961), the Supreme Court held that a federal land bank was not subject to state personal property taxes on its interests in oil and gas leases. The personal

property tax at issue was a direct tax. This case does not affect the Court's analysis regarding the Transfer Taxes. Further, it appears the Court in *Wichita* relied on constitutional immunity in reaching its decision. *Id.* At 149 ("Congress has the power to determine, within the limits of the Constitution, the extent that its *instrumentalities* shall enjoy immunity from state taxation.") (emphasis added). Defendants have never argued that the Enterprises are federal instrumentalities.

In the end, this case turns on the interpretation of "all taxation." *Wells Fargo* held that all taxation means all direct taxation, not excise taxation. Defendants' cases do not change this analysis . Because the Michigan Transfer Taxes are excise taxes, Defendants are liable.

### E. The Michigan Exemption

Plaintiffs also seek a ruling that Defendants are not exempt under a Michigan law which exempts government entities from taxation. Defendants argued that the Court need not reach this issue, since they said they were exempt under the federal exemption, and that the federal exemption controlled by way of the Supremacy Clause of the Constitution. Defendants did not address the state law exemption in their briefs, or at oral argument. Because the Court found that Defendants are not exempt under the federal statutes, it will briefly address the Michigan exemption.

The Michigan exemption states that a deed is exempt from the Transfer Taxes if it is:

> A written instrument in which the grantor is the United States, this state, a political subdivision or municipality of this state, or an officer fo the United States or of this state, or a political subdivision or municipality of this state, acting in his or her official capacity. M.C.L. § 207.523.

Defendants have repeatedly maintained that their status as federal instrumentalities is irrelevant. They did not argue at any point that they are federal instrumentalities. A recent case from the District of Nevada held that Fannie Mae is not a federal instrumentality for tax purposes. *See Nevada v. Countrywide Home Loans*, 812 F.Supp. 2d 1211, 1216-18 (D. Nev. Sept. 16, 2011). The Court relied on the fact that Fannie Mae is "essentially a privately owned mortgage banker." *Id.* at 1217.

The Enterprises are not federal instrumentalities; they are not exempt under the Michigan statute.

## IV.  CONCLUSION

In the end, this case turns on a single question: whether a statutory exemption from "all taxation" includes excise taxes such as the Michigan Transfer Taxes. *Wells Fargo* dictates that it does not. Accordingly, the Enterprises are liable for the Transfer Taxes.

Plaintiffs' and State Plaintiff's motion for summary judgment is **GRANTED**. Defendants' motion is **DENIED**. The issue of damages remains.

**IT IS ORDERED.**

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: March 23, 2012

| |
|---|
| The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on March 23, 2012.<br><br>S/Linda Vertriest<br>Deputy Clerk |